**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MATTHEW G. FALKNER, )<br>on behalf of himself and all others similarly )<br>situated, )<br> )<br>        Plaintiff, )<br> )<br>        v. )<br> )<br>REDFLEX TRAFFIC SYSTEMS, INC., )<br>and REDFLEX HOLDINGS, LTD., )<br> )<br>        Defendants. ) | Case No. 14-cv-5459<br><br>Hon. Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Redflex Traffic Systems, Inc. ("Defendant" or "Redflex") has filed a motion to dismiss Plaintiff's Amended Complaint (the "Amended Complaint"). For the following reasons, the Court grants Defendant's motion [36] without prejudice.

### FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint. (R. 30.) On or about January 19, 2013, the City of Chicago (the "City") issued Plaintiff Matthew G. Falkner ("Plaintiff" or "Falkner") a ticket through the City's automated red light camera system. (*Id*. ¶ 5.) Redflex began installing and operating the City's red light cameras in 2003. (*Id*. ¶¶ 6, 12.) The City has approximately 384 red light cameras, and issues $100 tickets for violations of its red light ordinance. (*Id*. ¶ 3.) In 2010, a whistle-blower reported that Redflex had bribed the City of Chicago to secure its contract with the City, and Redflex has since admitted that the bribery took place. (*Id*. ¶ 1.)

1

Plaintiff alleges that as a result of Redflex's bribery scheme, Redflex secured two contract provisions with the City of Chicago that caused him injury. (*Id.* ¶ 2.) First, Plaintiff asserts that Redflex's bribery caused the City to agree to "supra market" compensation for Redflex—revenues above what Redflex would otherwise have been able to charge the City for installing and operating its red light cameras. (*Id.*) Plaintiff claims that the above-market compensation caused him injury because the City paid a portion of his $100 red light fine to Redflex. (*Id.* ¶ 5.) Second, Plaintiff alleges that Redflex's bribery resulted in the "unlawful and unconstitutional delegation of police power to a private for-profit organization, namely Defendant." (*Id.* ¶ 2.) In other words, Plaintiff claims that Redflex's bribery caused the City of Chicago to unlawfully delegate to Redflex the City's police power to decide whether motorists in Chicago violated its red light ordinance. Based on these theories, Plaintiff brings two counts for unjust enrichment against Redflex on behalf of himself and a proposed class of individuals to whom the City of Chicago issued red light tickets. He requests that Redflex disgorge to the proposed class the entire $100 million in revenues that the City allegedly compensated Redflex for installing and operating the City's automated red light cameras. (*Id.* ¶ 3.) Plaintiff alleges, and Redflex does not dispute, that the Court has subject matter jurisdiction over this matter under the Class Action Fairness Act provisions of 28 U.S.C. § 1332(d). (*Id.* ¶ 9.) Redflex now moves to dismiss Plaintiff's claims on several grounds, including Plaintiff's lack of standing to bring suit against it.

## LEGAL STANDARD

Article III standing is a threshold jurisdictional requirement in every federal action. *See Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 606 (7th Cir. 2013); *Horne v. Flores,* 557 U.S. 433, 445, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009). "Standing arises

under the 'case or controversy' requirement, found in U.S. Const. art. III, § 2, and 'serves to identify those disputes which are appropriately resolved through the judicial process.'" *Johnson*, 719 F.3d at 606 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Accordingly, Rule 12(b)(1) motions for lack of subject matter jurisdiction properly address standing issues. *See Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012).

"As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). The plaintiff must establish each of the following three elements:

> (1) the plaintiff must have suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized," and (b) actual or imminent, not conjectural or hypothetical; (2) "there must be a causal connection between the injury and the conduct complained of" (*i.e.,* the injury must be fairly traceable to the challenged action of the defendant); and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Sierra Club v. EPA*, 774 F.3d 383, 388 (7th Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61, 112 S.Ct. 2130). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 496 (7th Cir. 2005) (quoting *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id*. Further, "'[i]n reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.'" *Sierra Club*, 774 F.3d at 389 (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003)).

**ANALYSIS**

Defendant moves to dismiss the Amended Complaint on several bases. It argues that the Amended Complaint fails as a matter of law because Plaintiff does not have Article III standing to bring either claim. It also asserts that the Court should dismiss the Amended Complaint because the City of Chicago is an indispensable party under Rule 19 that Plaintiff has not named as a defendant. Finally, Defendant contends that neither count states a claim for unjust enrichment because Plaintiff cannot show that he is entitled to the revenues that the City paid Redflex, and that the Court should dismiss Count Two because Plaintiff does not sufficiently plead an unlawful delegation of the City's police power. Because the Court finds that Plaintiff does not establish that he has standing to bring either claim, the Court dismisses the Amended Complaint without reaching Defendant's other arguments.

**I.  Standing**

The Court begins by addressing the Article III standing issue because "without a case or controversy under Article III, [a court has] no authority to proceed to the merits." *United States v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 818 (7th Cir. 2013) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). Defendant argues both that Plaintiff has not alleged an "injury in fact," and that there is no "causal connection" between Plaintiff's alleged injury and Redflex's conduct. The Court conducts the standing analysis independently for each of Plaintiff's two counts. *See Rifkin v. Bear Stearns & Co.*, 248 F.3d 628, 634 (7th Cir. 2001) ("[t]he plaintiffs must establish the district court's jurisdiction over each of their claims independently").

### A. Count One

Plaintiff alleges in his first count that Redflex bribed the City to obtain a contractual provision "setting the amount of [Redflex's] compensation at an amount that is higher than the rate that the market would have justified for such services absent the bribery." (R. 30, Am. Compl. ¶ 29.) Plaintiff alleges further that, "[a]s a direct result of the bribery scheme, Defendant was able to contractually retain approximately 20-25% of all 'ticket revenue' generated by tickets paid by class members," and "[t]he portion of the 'ticket amount' illegally paid to Defendant[] came directly from the cash and/or checking accounts of class members." (*Id*. ¶¶ 29, 31.) Essentially, Plaintiff is alleging that through its wrongful conduct, Redflex was able to obtain increased revenues, which the fines paid by Plaintiff and the proposed class funded. Even taking the facts as alleged, however, the Court must dismiss Count One because Plaintiff does not allege any injury from Redflex's conduct.

Plaintiff alleges that the City of Chicago issued him a $100 red light ticket, which he paid. In Count One, he does not allege that he did not violate the City's red light ordinance or that his ticket was invalid. Instead, Plaintiff argues that he has a legally protected interest in not having the City fund Redflex's wrongfully procured, above-market compensation with the proceeds of his red light ticket. This argument fails because the City's payments to Redflex had no effect on the fines that Plaintiff (and the proposed class) paid to the City.

Plaintiff alleges that the proposed class paid $500 million in red light fines to the City, $100 million of which the City distributed to Redflex as compensation. (*Id*. ¶ 3.) Plaintiff claims that the $100 million the City paid to Redflex was greater than the fair market rate, but the size of the City's payments to Redflex had no effect on the dollar amount of the fines that Plaintiff and the proposed class paid to the City. If the City should have only paid Redflex $80

million, for example, then the City would have kept $420 million, but the proposed class would still have paid the City $500 million. Put slightly differently, Plaintiff only alleges that the proposed class paid a fixed amount of fines to the City, of which the City distributed too much as compensation to Redflex. Plaintiff does not plead facts establishing that Reflex's alleged bribery caused Plaintiff or any of the other proposed class members any injury.

Plaintiff also does not allege that Redflex's bribery increased the fines associated with the red light tickets themselves. As Redflex notes, the Illinois statute authorizing automated red light cameras specifically provides that, "[t]he compensation paid for an automated traffic law enforcement system must be based on the value of the equipment or the services provided and may not be based on the number of traffic citations issued or the revenue generated by the system." 625 ILCS 5/11-208.6(l). Redflex also attaches several contracts between the City and Redflex showing that the City paid Redflex a flat fee for the installation and maintenance of each camera system—Redflex's compensation does not appear to be linked to the amount of revenue the City generates in fines from the cameras.[1] (*See* R. 37-2, 37-3, and 37-4.) Plaintiff does not contest these facts.

Plaintiff's arguments in his response brief are also not to the contrary. He argues again that Redflex's bribery scheme secured it "supra competitive pricing," and states for the first time in a footnote that a company that has replaced Redflex charges much less per red light camera. Plaintiff does not explain how these facts impact him or the other proposed class members. If the City pays its new contractor less to install and operate each automated red light camera than

---

[1] Redflex challenges Plaintiff's standing as alleged in the Amended Complaint on both facial and factual grounds. Accordingly, in determining whether Plaintiff has standing the Court may properly consider evidence outside of the allegations in the Amended Complaint. *See Apex Digital*, 572 F.3d at 444 (quotation omitted) ("[W]hen considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.")

it paid Redflex, for example, that does not show that the proposed class now pays less in fines to the City. In fact, Redflex argues, and Plaintiff does not contest, that the same $100 red light fine has been in place throughout the entire relevant time period. *See* Chicago Municipal Code §§ 9-102-020(e); 9-100-020(d). Because Plaintiff does not allege any injury, the Court dismisses Count One for lack of standing.

    **B.**    **Count Two**

Before addressing Plaintiff's standing with respect to his second count, the Court must first determine Plaintiff's theory of relief. In Count Two of the Amended Complaint, Plaintiff alleges that Redflex's bribery scheme led to an unlawful delegation of police power to Redflex. (R. 30, Am. Compl. ¶¶ 2; 44.) Plaintiff asserts that although Illinois law requires that the determination by an outside contractor (i.e., Redflex) of whether a motorist violated a red light ordinance must be reviewed and approved by a law enforcement officer, Redflex bribed the City to conduct only a "perfunctory" review of Redflex's determinations. The Amended Complaint alleges that this perfunctory review did not meet the Illinois statutory requirements, and was unconstitutional because it resulted in an improper delegation of the City's police power to Redflex. (*Id*.) Thus, Plaintiff contends that his ticket was void and Redflex was unjustly enriched when the City paid it his ticket proceeds. (Id. ¶¶ 45-48.)

As Defendant notes in its motion to dismiss, however, Illinois law actually provides that in municipalities of greater than one million people (i.e., Chicago), violation determinations made by an outside contractor can be reviewed and approved by a law enforcement officer, "or by an additional fully-trained reviewing technician who is not employed by the contractor who employs the technician who made the initial determination." 625 ILCS 5/11-208.3(b)(3).

7

Defendant states that in fact, the City contracted with IBM to perform a second-level review of Redflex's initial determinations in compliance with this requirement.

In its response, Plaintiff does not attempt to refute Defendant's argument. Instead, he completely changes his theory, abandoning his allegations that the City delegated its police power to Redflex in violation of the Illinois state statute. Instead, he argues that the Illinois statute itself violates the Illinois constitution. There are several problems with this about-face. First, although a plaintiff may add allegations in his response to a motion to dismiss, he cannot change the theory of relief in his complaint entirely. *Compare Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963 (7th Cir. 1992) ("[a] plaintiff need not put all of the essential facts in the complaint. He may add them by affidavit or brief…") *with Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (quotation omitted) ("it is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss…"); *see also Jones v. Sabis Educ. Sys., Inc.*, No. 98-CV-4252, 1999 WL 1206955, at *3 (N.D. Ill. Dec. 13, 1999) ("In his response to the motion to dismiss, a plaintiff may assert additional facts to clarify an existing claim, but he may not amend (that is, correct or alter) his complaint such that he essentially asserts a new claim"). Here, Plaintiff is not adding facts to further elucidate how the City violated the statute. Instead, he is changing his theory altogether to argue that the statute itself is unconstitutional. The law does not allow Plaintiff to make such a substantive amendment to his complaint in a response to a motion to dismiss.

Second, Plaintiff's shifting theory of liability on Count Two completely undermines his standing argument. In its motion to dismiss, Defendant attacks Plaintiff's standing to sue Redflex in part because even if the City's delegation of its police power to Redflex was unlawful, it was the City that injured Plaintiff—not Redflex. In response, Plaintiff argues that he

has standing because it was Redflex's bribery that caused the City to unlawfully delegate its police powers. Then, Plaintiff switches gears and argues instead that although the City complied with the Illinois state statute, the statute itself violates the Illinois constitution. Plaintiff cannot have it both ways. If his claim is that the City followed the statute but the statute itself is unconstitutional, he cannot argue that he has standing because Redflex bribed the City to not follow the statute. Plaintiff also notes in passing in his response that Redflex's bribery "may well explain" why the Illinois state statute allows Chicago, but not smaller municipalities, to hire private contractors to conduct its second-level review of red light ticket determinations. If that is his claim, then he needs to assert it in his complaint. To meet his burden to establish standing at the motion to dismiss stage, Plaintiff must plead general factual allegations showing that he has suffered a legally cognizable injury, and that his injury is "fairly traceable" to Redflex. *See Lac Du Flambeau*, 422 F.3d at 495. Because Plaintiff substantively changes his theory of relief in his response brief and his shifting allegations undermine his theory of standing, the Court also dismisses Count Two for lack of standing.

## II. Dismissal Without Prejudice

As a final matter, the Court notes that Plaintiff has now had two attempts to state a claim for relief. Redflex also moved to dismiss Plaintiff's original complaint. After that motion was fully briefed, but before the Court issued a ruling on it, Plaintiff successfully sought leave to amend his complaint. The Court now dismisses that Amended Complaint. While the Court will provide Plaintiff with one more chance to amend his complaint, this will likely be Plaintiff's final opportunity. Although the Court does not address Defendant's additional arguments because it finds that Plaintiff has not adequately pled facts to establish standing, Plaintiff should consider them carefully if he chooses to file another complaint.

9

**CONCLUSION**

For the foregoing reasons, the Court grants Defendant's motion to dismiss without prejudice.

DATED: April 10, 2015  ENTERED

_____
AMY J. ST. EVE
U.S. District Court Judge