**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MATTHEW G. FALKNER, ) <br> on behalf of himself and all others similarly ) <br> situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHICAGO, REDFLEX TRAFFIC ) <br> SYSTEMS, INC., REDFLEX HOLDINGS, LTD., ) <br> XEROX STATE AND LOCAL SOLUTIONS, ) <br> INC., and INTERNATIONAL BUSINESS ) <br> MACHINES CORPORATION, ) <br> ) <br> Defendants. ) | Case No. 14-cv-5459 <br><br> Hon. Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants Redflex Traffic Systems, Inc. and Redflex Holdings, Ltd. (collectively, "Redflex"), the City of Chicago ("City"), Xerox State and Local Solutions, Inc. ("Xerox"), and International Business Machines, Corp. ("IBM;" collectively, "Defendants") have filed motions to dismiss Plaintiff Matthew Falkner's ("Plaintiff") Second Amended Complaint ("Complaint"). The Court grants Defendants' motions and dismisses the Complaint with prejudice.

### STATEMENT

On May 1, 2015, Plaintiff filed a three-count Complaint alleging that (1) the City's red light camera system under 625 ILCS 5/11-208.3(b)(3) ("Act") constitutes an unconstitutional delegation of "Police Power" under the Illinois Constitution; (2) Defendants were unjustly enriched as a result of the unconstitutional Act's invalid citations; and (3) the City violated 42

U.S.C. §1983 by depriving Plaintiff of his property without due process of law in violation of the Fourteenth Amendment to the United States Constitution as a result of the unconstitutional Act's invalid citations.[1] (R. 48 at 7-8.) For the following reasons, the Court grants Defendants' motions and dismisses the Complaint with prejudice.

## BACKGROUND

The following facts are taken from Plaintiff's Second Amended Complaint. (R. 48.) In evaluating the motions to dismiss, the Court accepts as true the Complaint's well-pleaded factual allegations and draws all reasonable inferences in favor of Plaintiff. *Stayart v. Yahoo!, Inc.*, 623 F.3d 436, 438 (7th Cir. 2010).

At around 11:00 a.m. on January 19, 2013, the City's red light camera system caught Plaintiff allegedly running a red light on the 7600 block of South Stony Island Avenue, Chicago, IL. (*Id.*, Ex. A.) On February 10, 2013, the City issued Plaintiff a ticket and a one-hundred dollar fine. (*Id.* at ¶ 6; *Id.*, Ex. A.) The ticket provided Plaintiff with three options: he could (1) pay the fine without contesting the ticket, (2) contest the ticket by mail, or (3) contest the ticket via an in-person hearing. (*Id.*, Ex. A.) Plaintiff paid the fine without contesting the ticket. (*Id.* at ¶ 6; *Id.*, Ex. A.)

Between April 2003 and at least May 2015, the City contracted with the other defendants to install and operate red light camera systems throughout Chicago. (*Id.* at ¶1.) In that time, the City's camera systems produced over five million red light violation citations and amassed over $520,000,000 in fines. (*Id.* at ¶1.) Specifically, the camera systems issue citations via a "Digital

---

[1] This Court has jurisdiction to hear the current case under 28 U.S.C. §1331, which "grants district courts 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Evergreen Square of Cudahy v. Wis. Hous. and Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015), quoting *Gunn v. Minton*, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013). Plaintiff also alleges, and Defendants do not dispute, that the Court has subject matter jurisdiction over this matter under the Class Action Fairness Act provisions of 28 U.S.C. § 1332(d). (*Id.* ¶ 12.)

Image Verification" process where vendors examine the cameras' photographic and video evidence to determine whether a driver ran a red light, violating the City's Municipal Code. (*Id.* at ¶¶2, 17.) First, a primary vendor installs and operates the red light camera systems and conducts an "initial review" of the evidence to determine whether a driver committed a prospective violation by running a red light. (*Id.* at ¶¶16-17.) Next, if the primary vendors identify a prospective violation, they forward the relevant evidence to a second vendor for "further review." (*Id.* at ¶¶18-20.) If the second vendor concurs with the primary vendor's violation assessment, the second vendor (1) uploads the camera evidence to the City's Department of Finance, 2) sends a request to the Illinois Secretary of State for the registered vehicle owner's name and address using the license plate number found in the camera evidence, and (3) sends the relevant information to a printing vendor that issues the final citation. (*Id.* at ¶22.)

Redflex served as the City's primary vendor from April 2003 through February 2014. (*Id.* at ¶7.) Redflex's service agreement required at least eighty-five percent of its prospective violation submissions to the second vendor to ultimately show an enforceable ordinance violation. (*Id.* at ¶18.) The City then hired Xerox to replace Redflex as the City's primary vendor around October 2013 and completed the transition by February 2014. (*Id.* at ¶9.) Xerox's service agreement required at least ninety percent of its prospective violation submissions to the second vendor to ultimately show an enforceable ordinance violation. (*Id.* at ¶19.) From April 2003 to at least May 2015, IBM served as the City's second vendor. (*Id.* at ¶10.) During that time, IBM reviewed approximately 500,000 prospective violations per year for the City. (*Id.* at ¶21.) None of the vendor Defendants—Redflex, Xerox, and IBM—or any of their employees are sworn members of any law enforcement agency. (*Id.* at ¶24.)

In Count One, Plaintiff now asserts that the Act constitutes an "unconstitutional delegation of Police Power" under the Illinois Constitution, as it "permit[s] private parties to determine that a violation of law has occurred without the involvement of any member of a law enforcement agency[.]" (R. 48 at ¶¶37-38.) Defendants counter that Plaintiff has no standing, that his claim is procedurally deficient under Federal Rule of Civil Procedure 5.1, and that the Act allows a constitutional delegation of executive power. The Court agrees. In light of the Act's constitutionality, the Court does not address Counts Two and Three, as they directly hinge on the Act being unconstitutional.[2]

**ANALYSIS**

**I.      Rule 12(b)(6) Legal Standard**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. Put differently, a

---

[2] In addition, Defendants argue, and Plaintiff fails to address, that Count Three runs afoul of the relevant statute of limitations. The Court agrees. In Count Three, Plaintiff asserts a §1983 claim against the City, stating that the Act, and resulting citations, deprived him of his property without due process of law. (R. 48 at 8.) "[T]he statute of limitations for §1983 actions in Illinois," however, "is two years." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015); *see also* 735 ILCS §5/13-202. Further, "[t]he date at which the claim accrues and thus starts the running of the limitations period is a matter of federal law, and generally occurs when a plaintiff knows the fact and the cause of an injury." *Id*. Here, Plaintiff received his citation on February 10, 2013 and paid the fine soon thereafter. Plaintiff filed his §1983 claim, however, on May 1, 2015—over two years later. Thus, the Court dismisses Count Three as time-barred.

4

"complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), quoting *Twombly,* 550 U.S. at 570. Ultimately, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Additionally, although a plaintiff need not plead facts in the complaint to defeat potential affirmative defenses, where "the allegations of the complaint itself set forth everything necessary to satisfy [an] affirmative defense," the plaintiff pleads himself out of court. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

## II.     625 ILCS 5/11-208.3(b)(3) Constitutionality

Count One of the Complaint challenges the Act's constitutionality. Plaintiff's Complaint only asserts this claim against the City.[3] (R. 48 at ¶¶ 34-37.) Specifically, the Act states, in relevant part:

> In municipalities with a population of 1,000,000 or more inhabitants . . ., the automated traffic law ordinance shall require that all determinations by a technician that a motor vehicle was being operated in violation of Section 11-208.6, 11-208.9, or 11-1201.1 or a local ordinance must be reviewed and approved by a law enforcement officer or retired law enforcement officer of the municipality or county issuing the violation or by an additional fully-trained

---

[3] Even if Plaintiff intended to assert Count One against all Defendants, he is precluded from doing so because Plaintiff lacks standing for similar reasons detailed in the Court's previous April 2015 Opinion. *See Falkner v. Redflex Traffic Systems, Inc.*, No. 14-cv-5459, 2015 WL 1621238, at *2-4 (N. D. Ill. April 10, 2015.). Plaintiff asserts that the Act is unconstitutional, but he does not allege in the Complaint any "causal connection" whatsoever between the Act's unconstitutionality and the private vendor Defendants that had nothing to do with drafting or implementing the Act. *Sierra Club v. EPA*, 774 F.3d 383, 388 (7th Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Moreover, Count Two suffers from the same problem. Plaintiff asserts that the vendor Defendants were unjustly enriched as a result of the allegedly unconstitutional automated red light citations and underlying Act. (R. 48 at 8.) As the Court held in its April 2015 Opinion, however, Plaintiff fails to allege that the vendor Defendants received any payment connected to the individual citations and fines. *See Falkner*, 2015 WL 1621238, at *3 (discussing Redflex's service contract illustrating a "flat fee for the installation and maintenance of each camera system"). As a result, Counts One and Two do not assert injuries that are " 'fairly traceable' to Redflex" or the other vendor Defendants. *Falkner*, 2015 WL 1621238, at *4 (citing *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 495 (7th Cir. 2005)). Thus, Plaintiff has failed to cure his standing deficiencies with regard to the vendor Defendants in what is now his third attempt before this Court.

reviewing technician who is not employed by the contractor who employs the
technician who made the initial determination.

625 ILCS 5/11-208.3(b)(3). Defendants challenge Plaintiff's claim both on procedural grounds and on the merits. The Court addresses each argument in turn.

    **A.**    **Rule 5.1 Notice**

The City argues that Plaintiff's "constitutional challenge to an Illinois statute is subject to the provisions of Federal Rule of Civil Procedure 5.1." (R. 91 at 4.) The Court agrees. Given that Plaintiff has failed to provide Rule 5.1 notice, the Court dismisses his claim.

Federal Rule of Civil Procedure 5.1 mandates the following:

> A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly file a notice of constitutional question stating the question and identifying the paper that raises it, if a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity[.]

Fed. R. Civ. P. 5.1(a)(1)(B). Plaintiff has not notified the Illinois Attorney General of his constitutional challenge to 625 ILCS 5/11-208.3(b)(3). Thus, the Court dismisses Plaintiff's Complaint. *See Max M. v. New Trier High School Dist. No. 203*, 859 F.2d 1297, 1300 (7th Cir. 1988) (declining to consider a party's constitutional challenge after the party and district court failed to properly notify the Attorney General of said challenge); *see also Senne v. Village of Palatine*, No. 10 C 5434, 2013 WL 68703, at *4 (N.D. Ill. Jan. 4, 2013) ("The Village has not followed the requirements of Rule 5.1 in asserting this [constitutional] defense. The Court therefore strikes this defense, without prejudice."); *Crosby v. Regional Transp. Auth.*, No. 07 C 6235, 2010 WL 2350707, at *2 (N.D. Ill. June 11, 2010) ("[Plaintiff] has not complied with [Fed. R. Civ. P. 5.1(a)], so we decline to consider the matter until he addresses the notice issue. We therefore deny without prejudice the portions of the parties' motions that concern [Plaintiff's] claims under the Fourteenth Amendment and 42 U.S.C. §1983.").

The Court is not persuaded by Plaintiff's argument to the contrary. Plaintiff argues that Rule 5.1 notice is not required if one of the state's agencies is a named party and "[u]nder Illinois law, the City of Chicago . . . is an agency of the State of Illinois because its powers are delegated from the State, even though, as a home rule unit, the city has all powers not specifically prohibited by the General Assembly." (R. 85 at 2, n.2, citing Ill. Const., Art. VII, Sec. 6.) Relevant Illinois governing documents and case law, however, dictate otherwise. The Illinois Constitution treats local government units and state agencies as separate entities. *See* Ill. Const., Art. VIII, Sec. 2 ("The budget shall set forth . . . a plan for expenditures and obligations during the fiscal year of every . . . public agency created by the State, but not units of local government[.]"); *see also* Ill. Const., Art. IX, Sec. 9 (" 'State debt' means bonds or other evidences of indebtedness. . . which are incurred by . . . any other public agency created by the State, but not by units of local government[.]"). Furthermore, the Illinois Municipal Code treats local government units as separate from state agencies. *See* 65 Ill. Comp. Stat. Ann. 5/8-12-10 ("Any State agency *or* unit of local government, within its respective function, may render such services to the Authority as the Authority may request.") (emphasis added). Importantly, plaintiffs challenging statutes as unconstitutional must adhere to Rule 5.1 despite naming a city or local government unit as a defendant. *See Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 684 (7th Cir. 2014) (affirming the lower court's dismissal of plaintiff's constitutional challenge and noting that "[Plaintiff] did not . . . inform the Attorney General of their challenge to a federal statute, as required under Federal Rule of Civil Procedure 5.1") A number of courts have required the same. *See, e.g., Wayman v. City of Saratoga Springs*, No. 11-CV-969, 2011 WL 6935129 (D. Utah Dec. 12, 2011); *Snider v. City of Cape Girardeau*, No. 10-CV-100, 2011 WL 2174976 (E.D. Mo. June 3, 2011); *MAG Realty, LLC v. City of Gloucester City*, No. CIV. 10-988

7

RBK/AMD, 2010 WL 3210441 (D.N.J. Aug. 12, 2010); *SRE Real Estate, LLC v. City of Sturgis*, No. CIV. 10-5064-JLV, 2010 WL 3122630 (D.S.D. Aug. 9, 2010); *CSWS LLC v. Village of Bedford Park*, No. 08 C 747, 2008 WL 4148530 (N.D. Ill. Aug. 29, 2008).

As a result, Plaintiff failed to name either "the state, one of its agencies, or one of its officers or employees in an official capacity" as a defendant in his complaint. Fed. R. Civ. P. 5.1(a)(1)(B). Thus, Count One's constitutional challenge is procedurally deficient, and the Court dismisses the Complaint.

### B. 625 ILCS 5/11-208.3(b)(3) Is Constitutional

Plaintiff's failure to provide Rule 5.1 notice does not preclude the Court from rejecting his constitutional challenge on the merits. *See* Fed. R. Civ. P. 5.1(c) ("[T]he court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional."). Plaintiff argues that the Act is unconstitutional, as it "authorizes the City to contract with private parties, such as the Vendors, to determine whether its laws have been violated and to issue [c]itations on the City's behalf for such ordinance violations." (R. 48 at ¶5.) Put differently, Plaintiff asserts that the Act enables private entities to exercise power exclusive to government entities in violation of the Illinois Constitution. (*See* R. 85 at 9 ("[T]here is no government oversight whatsoever reviewing [sic] the decision to issue red light violation citations.").) The Court disagrees.

The Illinois Constitution provides that the "legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const., Art. II, Sec. 1. Particularly, "[a]s a matter of general principle, the constitutional rule is that power granted to the legislature cannot be delegated. Thus, the '[l]egislature must decide what the law shall be, and the power delegated to that department by the constitution cannot be again

delegated to any other body or authority.' " *Chicagoland Chamber of Commerce v. Pappas*, 378 Ill. App. 3d 334, 317 Ill. Dec. 113, 880 N.E.2d 1105, 1119 (2007) (quoting *People ex rel. Bernat v. Bicek*, 405 Ill. 510, 91 N.E.2d 588, 592 (1950)).

The Illinois General Assembly may, however, "delegate the administration of its laws to other bodies and may even grant limited discretion to those bodies in implementing the General Assembly's legislation." *Id*. Indeed,

> [l]egislative power is authority to pass rules of law for the government and regulation of people or property. Where the legislative body has the power to enact a law[,] as a necessary adjunct to such power it has the legal right to adopt a procedure for the administration of such law. It may do this through commissions, or through boards, and it may grant to such administrative bodies certain authority and certain powers in keeping with the spirit of the act for the practical application and operation of the law. It may even invest them with certain discretion to be exercised by them in the discharge of their functions as ministerial or administrative agencies . . . It is impractical for legislative acts providing for the health, welfare, protection, and necessities of the people through boards or commissions, to prescribe every detail of the duties to be performed by such boards or commissions. Such powers, when granted, are neither judicial nor legislative . . . The discretion granted is not a judicial or legislative discretion but a ministerial discretion falling within the doctrine of *ejusdem generis* as to powers conferred by the act.

*Id*. (quoting *Reif v. Barrett*, 355 Ill. 104, 188 N.E. 889, 901 (1933) (*overruled in part on other grounds by Thorpe v. Mahin*, 43 Ill. 2d 36, 250 N.E.2d 633, 636 (1969)). Put differently, "[a]lthough the General Assembly cannot divest itself of its inherent function to decide what the law shall be, it may authorize others to do those things which it might properly but cannot understandingly or advantageously do itself." *Bicek*, 405 Ill. at 517 (citing *R.G. Lydy, Inc. v. City of Chicago*, 356 Ill. 230, 190 N.E. 273 (1934)).

The crux of the analysis, then, revolves around whether the power the General Assembly delegates is legislative or executive in nature. "The fundamental distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and

9

conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; the latter is unobjectionable." *Bicek*, 405 Ill. at 517-18 (citations omitted). Indeed, "delegation would only be improper should the General Assembly allow the body to which it delegates authority so much discretion that it may, in effect, make the law itself." *Pappas*, 378 Ill. App. 3d. 334, 317 Ill. Dec. 113, 880 N.E.2d at 1120 (citation omitted). "The General Assembly may avoid this result by limiting the authority of the body to which the General Assembly delegates some of its own power through the provision of guidelines and standards for the body to follow." *Id*. (citing *East St. Louis Fed'n. of Teachers, Local 1220, v. East St. Louis Sch. Dist. No. 189 Fin. Oversight Panel*, 178 Ill. 2d 399, 227 Ill. Dec. 568, 687 N.E.2d 1050, 1063-64 (1997)).

Here, the General Assembly has provided clear "guidelines and standards" governing the red light statutes and relevant automated red light camera system, making the Act constitutional. *Id*. (citation omitted). Illinois state law requires that drivers "facing a steady circular red signal alone shall stop at a clearly marked stop line, but if there is no such stop line, before entering the crosswalk on the near side of the intersection, or if there is no such crosswalk, then before entering the intersection, and shall remain standing until an indication to proceed is shown." 625 ILCS 5/11-306(c)(1). The law also establishes an " 'automated traffic law enforcement system' . . . with one or more vehicle sensors working in conjunction with a red light signal to produce recorded images of motor vehicles entering an intersection against a red signal indication in violation of Section 11-306[.]" 625 ILCS 5/11-208.6(a). Specifically, the statute defines the automated traffic law enforcement system as

> a system, in a municipality or county operated by a governmental agency, that produces a recorded image of a motor vehicle's violation of a provision of this Code or a local ordinance and is designed to obtain a clear recorded image of the

vehicle and the vehicle's license plate. The recorded image must also display the
time, date, and location of the violation.

. . .

As used in this section, "recorded images" means images recorded by an
automated traffic law enforcement system on: (1) 2 or more photographs; (2) 2 or
more microphotographs; (3) 2 or more electronic images; or (4) a video recording
showing the motor vehicle and, on at least one image or portion of the recording,
clearly identifying the registration plate number of the motor vehicle.

. . .

For each violation of a provision of this Code or a local ordinance recorded by an
automatic traffic law enforcement system, the county or municipality having
jurisdiction shall issue a written notice of the violation to the registered owner of
the vehicle as the alleged violator. The notice shall be delivered to the registered
owner of the vehicle, by mail, within 30 days after the Secretary of State notifies
the municipality or county of the identity of the owner of the vehicle, but in no
event later than 90 days after the violation.

625 ILCS 5/11-208.6(a), (b), (d).

Finally, the law allows "[a]ny municipality or county [to] provide by ordinance for a system of administrative adjudication of . . . automated traffic law violations as defined in Section 11-208.6[.]" 625 ILCS 5/11-208.3(a). The purpose of this administrative adjudicatory system is to establish "fair and efficient enforcement of municipal or county regulations." *Id*. Specifically, state law requires that "[a]ny ordinance establishing a system of administrative adjudication under this Section shall provide for [a] traffic compliance administrator authorized to adopt, distribute and process parking, compliance, and automated speed enforcement system or automated traffic law violation notices[.]" 625 ILCS 5/11-208.3(b)(1). Further, state law delineates a framework for how a traffic compliance administrator shall adjudicate automated traffic violations. The Act states, in relevant part, that,

> [i]n the case of an automated traffic law violation, the ordinance shall require a
> determination by a technician employed or contracted by the municipality or
> county that, based on inspection of recorded images, the motor vehicle was being

11

operated in violation of Section 11-208.6, 11-208.9, or 11-201.1 or a local ordinance . . . In municipalities with a population of 1,000,000 or more inhabitants . . ., the automated traffic law ordinance shall require that all determinations by a technician that a motor vehicle was being operated in violation of Section 11-208.6, 11-208.9, or 11-1201.1 or a local ordinance must be reviewed and approved by a law enforcement officer or retired law enforcement officer of the municipality or county issuing the violation or by an additional fully-trained reviewing technician who is not employed by the contractor who employs the technician who made the initial determination.

625 ILCS 5/11-208.3(b)(3)

The relevant statutes detail a thorough framework governing the red light violation, the automated red light traffic system, and, specifically, the two-layer-technician-review process, leaving no room for the traffic compliance administrator or technicians to "make the law" which "cannot be done." *Bicek*, 405 Ill. at 517 (citation omitted). The Act merely enables the technicians to review recorded images and determine whether a driver was crossing a particular landmark at the time the street light displayed a red signal, thereby violating the General Assembly's red light statutes. In other words, the Act simply confers the "authority or discretion as to [the Act's] execution" to the administrator and technicians, which is "unobjectionable." *Id.* (citation omitted). This simple executive task does not allow the technicians to determine how a "red light violation" is defined or even what landmarks to use to determine whether a driver committed a violation. The law's comprehensive blueprint for red light violations is far from allowing these entities to "make the law [themselves]." *See Pappas*, 378 Ill. App. 3d. 334, 317 Ill. Dec. 113, 880 N.E.2d at 1120 (citation omitted). This framework provides a concrete example of a delegation of executive power that the General Assembly "might properly but cannot understandingly or advantageously do itself." *Bicek*, 405 Ill. at 517 (citing *R.G. Lydy, Inc.*, 356 Ill. 230, 190 N.E. 273 (1934)).

The Court disagrees with Plaintiff's contention that the Act is nevertheless unconstitutional because it "provides for red light citations to be issued solely on the private technician's judgment alone, without any opportunity for review by any agency or officer who is obliged to uphold the public interest." (R. 85 at 7.) Specifically, Plaintiff argues that "when it comes to government decision making . . . private persons serve private interests whereas public officials are sworn to make decisions based on the public interest." (*Id.* at 5.) The Court acknowledges that the Illinois and United States Supreme Courts have admonished legislative bodies against delegating law-making powers to other bodies—especially private ones. *See People ex. rel. Chicago Dryer Co. v. City of Chicago*, 413 Ill. 315, 109 N.E.2d 201, 206 (1952) ("The legislature cannot abdicate its functions or subject citizens and their interests to any but lawful public agencies, and a delegation of any sovereign power of government to private citizens cannot be sustained nor their assumption of it justified."); *see also Dept. of Transp. v. Assoc. of American Railroads*, 135 S. Ct. 1225, 1238 ("By any measure, handing off regulatory power to a private entity is 'legislative delegation in its most obnoxious form.' ") (Alito, J., concurring) (quoting *Carter v. Carter Coal Co.*, 298 U.S. 238, 311, 56 S. Ct. 855, 80 L. Ed. 1160 (1936)). As described in more detail above, however, the General Assembly is not delegating its "sovereign power of government" or "regulatory power" to the public traffic compliance administrator or private review-technicians. Rather, it is constitutionally delegating "the authority to *execute* the law." *People v. Olsen*, 388 Ill. App. 3d 704, 328 Ill. Dec. 118, 903 N.E.2d. 778, 786 (2009) (citation omitted) (emphasis in original). Accordingly, Plaintiff's reliance on these cases is misplaced.

Moreover, Plaintiff has not alleged any facts that warrant fears that the private technicians will "serve private interests." (R. 85 at 5.) As the Court noted in its April 2015

Opinion, "the Illinois statute authorizing automated red light cameras specifically provides that, '[t]he compensation paid for an automated traffic law enforcement system must be based on the value of the equipment or the services provided and may not be based on the number of traffic citations issued or the revenue generated by the system.' " *Falkner*, 2015 WL 1621238, at *3 (citing 625 ILCS 5/11-208.6(l)). Further, the relevant service agreements adhere to this mandate. Vendor Defendants have provided a number of contracts between the City and vendor Defendants showing that the City paid them a flat fee for the installation and maintenance of each camera system. The vendor Defendants' compensation does not appear to be linked in any way to the amount of revenue the City generates in fines from the red light citations. (*See* R. 37-2; R. 37-3; R. 37-4; R. 66-2; R. 66-3); *see also Falkner*, 2015 WL 1621238, at *3. Thus, there are no allegations to suggest that the private technicians were incentivized or capable in any way of acting on "private interests" under the Act's automated red light system other than Plaintiff's perfunctory statement that the vendor Defendants are "under no sworn duty to act in the public interest." (R. 48 at ¶36.) Although this may be true, it does not render the Act unconstitutional for the reasons described above.

In light of the General Assembly's executive delegation, the Act's automated red light system is constitutional, and the Court dismisses the Complaint. In the Court's April 2015 Opinion dismissing Plaintiff's second complaint, the Court advised Plaintiff that his next "will likely be Plaintiff's final opportunity." *Falkner*, 2015 WL 1621238, at *5. His third opportunity now meets the same fate. Consequently, the Court dismisses the Complaint with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions and dismisses the Complaint with prejudice.

DATED:  December 9, 2015                                          ENTERED

 

_____
AMY J. ST. EVE
U.S. District Court Judge

15